# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **Richard Roland Laird,** | : | **NO. 17-9000** |
| **Appellant** | : | |
| | : | **(This is a Capital Case)** |
| **V.** | : | |
| | : | |
| **Secretary, PA Dept. of Corrections, et al.** | : | |
| **Appellees** | : | |

---

### APPELLEE'S LETTER BRIEF REGARDING IMPACT
### OF THORNELL v. JONES, 144 S.CT. 1302 (2024)

---

Appeal from the Order of the United States District Court for the Eastern
District of Pennsylvania, Entered August 19, 2016, in Case No. 11-1916,
Denying Appellant's Petition for Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2254

**JOHN T. FEGLEY, ESQ.**
**CHIEF OF APPEALS**
Attorney ID #314437

**JENNIFER M. SCHORN, ESQ.**
**DISTRICT ATTORNEY**
Attorney ID #85173

**DISTRICT ATTORNEY'S OFFICE**
**BUCKS COUNTY JUSTICE CENTER**
**100 N. MAIN STREET**
**DOYLESTOWN, PA 18901**
**215-348-6630**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………............... i

TABLE OF AUTHORITIES……………………………………….......…. ii

ARGUMENT……………………………………………………...……… 1

    I.    <u>Thornell v. Jones</u> commands that, in assessing prejudice, the reviewing court must assess the relative strength of the newly presented evidence taking into consideration the prosecution's response and rebuttal to the new evidence…………………….. 1

    II.    <u>Thornell v. Jones</u> further commands that the strength or weakness of this new evidence must be weighed against the entirety of the evidence presented to the jury and viewed as part of the whole picture and not just whether a single mitigator would have had some additional weight………………………. 6

CERTIFICATE OF BAR MEMBERSHIP………………….....………….. 11

CERTIFICATE OF COMPLIANCE FED R.APP.P.32…………………. 12

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS…………… 13

CERTIFICATE OF VIRUS CHECK…………………………………….. 13

CERTIFICATE OF SERVICE……………………………………….…… 14

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Bobby v. Van Hook, 558 U.S. 4, 13 (2009) ............................................................9
Commonwealth v. Johnson, 107 A.3d 52, 84 (Pa. 2014) ........................................3
Commonwealth v. Laird, 119 A.3d 972, 999 (Pa. 2015)..........................................9
Thornell v. Jones, 144 S.Ct. 1302 (2024) ............................................. 1, 3, 6, 9, 10

**Statutes**

28 U.S.C. § 2254 .....................................................................................................4
Fed. R. App.P. 32 ..................................................................................................12

**Rules**

Fed. R. App. P.32 (a)(6).........................................................................................12
Fed. R. App.P. 32(a)(5)..........................................................................................12

# ARGUMENT

By Order dated August 5, 2024, this Honorable Court directed the parties to address what, if any, impact the recent Supreme Court's decision in <u>Thornell v. Jones</u>, 144 S.Ct. 1302 (2024), has on the instant case. Appellees maintain that this decision informs the manner in which Appellant's allegedly new mitigation evidence is assessed and weighed in determining whether Appellant was prejudiced by any perceived failure to investigate by trial counsel. However, this decision has no bearing over the question of whether trial counsel's investigation and presentation of mitigating evidence was objectively reasonable under the circumstances. When prejudice is assessed consistent with the <u>Jones</u> opinion's guidance, it is clear that no prejudice was suffered, even if deficient performance is found.

**I.  <u>Thornell v. Jones</u> commands that, in assessing prejudice, the reviewing court must assess the relative strength of the newly presented evidence taking into consideration the prosecution's response and rebuttal to the new evidence.**

The <u>Jones</u> Court found that the Ninth Circuit had misapplied the well-established test for proving prejudice in three ways. One such error was the Circuit Court's application of its own rule which prohibited the habeas court from assessing the relative strength of the new expert. The <u>Jones</u> Court found that this Circuit rule was "clearly unsound" as the evaluating the strength of the newly proffered expert report or testimony was "necessarily require[d]" in determining if there was a reasonable probability of a different result. <u>Jones</u>, at 1310.

1

In weighing the evidence before it, the Supreme Court noted that the new evidence of sexual abuse was "entirely uncorroborated" and provided by Jones himself. The Court noted that the Arizona courts would skeptically view this evidence. Jones, at 1313. The Court further gave diminished weight to the reports of abuse which were contradicted by statements made by Jones in prior proceedings and because the expert witness' diagnoses lacked a causal connection to the murders at issue. Ibid.

These same considerations guide the evidence at issue in the matter at hand. The new evidence of abuse to which Laird now points comprises testimony from Dr. Lisak which relates statements and stories that Laird himself provided after he had previously been sentenced to death. There was no independent corroboration of these allegations of abuse. Dr. Lisak acknowledged that there were no records to corroborate these allegations of abuse. He further acknowledged that Laird had previously failed to disclose that his father sexually abused him when interviewed by the Drs. Dee, Fox, or Silverstein. N.T., 5/24/2012, p.182.

Further, while Dr. Lisak indicated that Laird's brother provided corroboration, Mark Laird testified that he never saw any sexual abuse. N.T., 6/19/2012, p.63. His testimony also greatly undermined the assertion that he would have testified to the additional details of his childhood memories at the 2007 penalty phase proceedings as the testimony offered during the PCRA was

not presented in an open courtroom, which previously caused him great discomfort, and was still only offered after learning tools for coping during his periods of incarceration. Id, at p.23-24; 44; 56.

Here, just as in Jones, the State Court factfinder views uncorroborated and self-serving testimony with skepticism. Particularly when it comes from the defendant himself only *after* the sentence of death was imposed on him, giving him a clear motivation for fabrication. *See*, *e.g.*, Commonwealth v. Johnson, 107 A.3d 52, 84 (Pa. 2014)(discussing the danger a capital defendant faces in making statements of remorse was they will be viewed by the jury through the lens of a capital defendant with clear motive to deceive).

Further, similar to the new mitigation evidence offered in Jones, Laird's new evidence "is not causally connected to the murders." Jones, at 1313. While it has been Laird's position throughout these proceedings that Dr. Lisak's testimony was crucial because he described how this murder was the result of his father's sexual abuse. Doc.103, p.52. However, this is simply not the case. Indeed, the assertion is based upon testimony not given during the PCRA proceedings and wholesale disregard for the facts surrounding the murder itself.

The causal line drawn by Laird from Dr. Lisak's testimony and the crimes is premised up on the opinion that Laird harbored a "long smoldering antagonism towards persons identified as homosexual" and the fact that Laird had a lifelong

3

aversion to being touched by men. Doc.103, p.50, 52. However, Dr. Lisak never testified to any "smoldering antagonism,"[1] N.T., 5/24/2012, p.115-116, and Laird pulls this opinion from a report which is not part of the PCRA Court record. Id, p.218-19 (excluding Dr. Lisak's report from evidence after he testified regarding his opinions). The reliance on reports not within the state court record is improper and this Court may not consider their contents. 28 U.S.C. § 2254(d)(2)(limiting review to facts based on "evidence presented in the State court proceeding.").

Further, while Dr. Lisak testified that Laird had such an aversion to being touched by other men that he could not even have his hair cut by a male barber, N.T., 5/24/2012, p.201-02. Again, this evidence is based entirely on the uncorroborated reports of Laird himself. Nevertheless, this aversion does not describe the events surrounding the murder. There was no evidence whatsoever that Anthony Milano tried to touch Laird or even get close to him. To the contrary, the evidence established that Anthony Milano was sitting by himself at the bar eating a sandwich and drinking a beer when Laird called for him to come and sit with them. Laird then ordered shots for the three men. N.T., 2/5/2007, p.195-203. Additionally, far from avoiding physical contact from men, Laird taunted

---

[1] It was Dr. Dee who did make such a description in his testimony at the 2007 penalty phase proceeding. N.T., 2/13/2007, p.97-98.

Anthony Milano by slow dancing with Chester in front of him while laughing. Id, at p.211-13; 258.

Thus, Dr. Lisak's testimony did not explain Laird's actions on the night of the murder but described an individual who should have acted in precisely the opposite manner under the circumstances. When questioned on this, Dr. Lisak's only explanation was that he never discussed the evidentiary discrepancies with Laird because he claimed he could not remember the facts of the murder. N.T., 5/24/2012, p.207. Such an explanation would not carry weight with the jury as they had just rejected a similar assertion at trial in rejecting the diminished capacity defense. Additionally, Laird's prior testimony which related to his version of events surrounding the murder directly rebut this feigned lack of memory.

As the evidence proffered through Dr. Lisak is uncorroborated and of questionable reliability, its evidentiary value is of little weight. Dr. Lisak's opinions similarly carry a greatly diminished relative strength as mitigators as his opinions not only fail to explain the reasons for the slaying but support an argument that Laird's offered history of abuse should have caused him to act in the opposite manner as the witnesses described. Dr. Lisak's conclusion in this regard both fails to link Laird's condition to his conduct and, in doing so, further negated the credibility of Laird's most recent uncorroborated reports of sexual

5

abuse by his father. Under these circumstances, Jones counsels that this new evidence should carry little if any weight in assessing prejudice.

II. **Thornell v. Jones further commands that the strength or weakness of this new evidence must be weighed against the entirety of the evidence presented to the jury and viewed as part of the whole picture and not just whether a single mitigator would have had some additional weight.**

The Jones Court also found that the Ninth Circuit opinion erred in not viewing the newly presented testimony in light of the mitigation evidence already presented at trial and weighing it against the weight of the aggravating circumstances. Specifically, the Supreme Court found there was no reasonable chance that the factfinder would reach a different result "on a second look at essentially the same evidence." Jones, at 1313. Laird's newly proffered evidence of sexual abuse was similar to that which the sentencing jury already heard and found as a mitigating factor. His arguments to the contrary are, again, based on a misreading of the record.

Laird's principle assertion in attempting to rebut the cumulative nature of the evidence presented in the PCRA hangs upon the District Court's description of "a single incident of potential sexual abuse" presented in the 2007 sentencing proceedings. Doc.103, 49. However, this description of the evidence is not supported by the record. Rather, the record from the 2007 proceedings confirms that the jury did hear, from Dr. Fox, that Laird's father forced Laird to perform oral sexual acts on his. N.T., 2/13/2007, p.17. The jury also heard from Dr. Dee that

6

Laird was sexually abused and that while Laird would not disclose who, he determined through his interview of Mark Laird that it was their father. Dr. Dee informed the jury about the psychological harm that came from his father forcing him to perform fellatio and then chastising him by telling him he was filthy, should not do those things, and directing him to wash his mouth out. Id, at p.59-61.

Moreover, the manner in which occurrences were described made plain that they were a regular occurrence. Mark Laird described their father's actions of physical abuse in terms of what his father "would do." N.T., 2/12/2007, p.70-71. He provided the same description of the incidents where he father and Laird would be naked behind closed doors together with him "crying because I *would* be knocking on the door…" Id, at p.72 (emphasis added). Dr. Dee similarly described the incidents of sexual abuse followed by the humiliation. N.T., 2/13/2007, p.61. This repeated description of the actions Laird's father *would do* plainly conveys the idea that it occurred more than one. *See* "Would" *Cambridge Dictionary,* dictionary.cambridge.org/us/grammar/British-grammar/would (Accessed Aug. 20, 2024)("We use *would* to refer to typical habitual actions and events in the past."). Dr. Fox explicitly testified to the jury that Laird's father would have him perform "oral sex *acts*". N.T., 2/13/2007, p.17 (emphasis added).

While neither doctor nor Mark Laird testified to discrete separate acts occurring on specific dates and times, the English language does not require them to

7

in order to convey multiple, habitual acts of sexual abuse. Thus, contrary to Laird's assertions and the description employed by the District Court, the record is clear that the jury was well aware of the fact that Laird's father inflicted habitual physical abuse and sexual abuse.

The same is true of the conclusions rendered by Dr. Lisak regarding Laird's aversion to contact with homosexuals. As related prior, Dr. Lisak did not testify that Laird had a "smoldering antagonism towards homosexuals." Instead, Dr. Lisak opined that the psychological result of his father's abuse would have made him avoid male contact of any kind – a conclusion that would run contrary to the actions Laird took the night he killed Anthony Milano. This weak and illogical description has to be weighed against the mitigating testimony that the jury did hear from Dr. Dee. The jury heard Dr. Dee's conclusion that Laird suffered a "long smoldering antagonism towards persons identified as homosexuals" and that sentiment might be the explanation for why Laird focused upon Anthony Milano on the night in question, N.T., 2/13/2007, p.97-98, providing a connection from abuse to the crime.

As the jury already heard about habitual sexual abuse suffered by Laird at the hands of his father and did indeed hear about how this abuse was a possible explanation for his antagonistic behavior and ultimately his horrendous acts of violence towards a person he perceived as homosexual, the evidence now forwarded by Laird is not substantially stonger than what was received by the jury in 2007.

Under similar circumstances, the Jones Court found that there was no reasonable chance that the sentencing body "would reach a different result on a second look at essentially the same evidence." Jones, at 1313. Thus, this new evidence does not provide any substantial weight to the mitigating evidence reviewed by the jury.

As for aggravating factors, the jury found that the killing was committed in the course of a kidnapping, which the Pennsylvania Supreme Court acknowledged was stongly supported by the serious and tragic facts within the record. Commonwealth v. Laird, 119 A.3d 972, 999 (Pa. 2015)("Under such circumstances, any contention that the jury was likely to consider as 'weak' the aggravating factor that Milano was killed while being kidnapped lacks any foundation in the record."). Indeed, our Supreme Court has previously found no prejudice was established by failure to present additional mitigating evidence where the murder in the course of an aggravated robbery was the sole aggravating factor against a bevy of mitigation as the proper focus of this assessment is on the weight of the factors and not their number. Bobby v. Van Hook, 558 U.S. 4, 13 (2009).

In addition to this strong and weighty aggravating factor, the jury also found a total of eight mitigating factors. Yet the jury found they were outweighed. It also cannot be ignored that the thrust of the mitigating evidence now proffered as "new" relates largely to the single mitigating factor of sexual abuse. But the jury heard

much of the testimony relating to the sexual abuse Laird now discloses was perpetrated upon him by his father. This is nothing new.

The jury also heard that this abuse caused Laird to maintain a "long smoldering antagonism towards homosexual individuals" which was possibly the cause of his fixation on Anthony Milano when he saw him at the bar. N.T., 2/13/2007, p.97-98. Thus, directly contrary to Laird's assertions now, the jury was already well aware of the fact that Laird suffered habitual sexual abuse at the hands of his father and received an expert's opinion linking that abuse to murder at issue. What they did not hear was Dr. Lisak's opinion which diagnosed Laird with an aversion which should have caused him to act in the opposite manner he did on the night in question and wholly avoid any contact with Anthony Milano. This is not weighty evidence which could have reasonably swayed the jury.

In short, the impact of Thornell v. Jones, *supra*, is that the errors of the Ninth Circuit, as recited by the Supreme Court in that matter, are precisely the errors that Laird asks this Court to make now.

WHEREFORE, Appellee respectfully requests that the Order of the District Court denying Laird habeas relief based be affirmed.

Respectfully submitted:

/s/Jfegley1987
_____
John T. Fegley, Esq.
Chief of Appeals

# **CERTIFICATE OF BAR MEMBERSHIP**

The undersigned hereby certifies that he is a member of the Bar of the United States Court of Appeals for the Third Circuit, having been admitted on June 21, 2016.

/s/Jfegley1987
_____
John T. Fegley, Esq.
Bucks County District Attorney's Office
Attorney for Appellees

DATED: August 26, 2024

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

1. I hereby certify that this brief complies with the type-volume limitation of this Court's Order dated August 5, 2024, directing that the letter brief be no longer than 10 pages.

2. I further certify that this brief complies with the typeface requirements of Fed. R. App.P. 32(a)(5) and the type style requirements of Fed. R. App. P.32 (a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/Jfegley1987
_____
John T. Fegley, Esq.
Chief of Appeals
Bucks County District Attorney's Office
Attorney for Appellees

DATED: August 26, 2024

## **CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS**

John T. Fegley, Esquire, being duly sworn according to law, deposes and says that he is a Deputy District Attorney of Bucks County, and that the material on the PDF file and hard copy of the brief are completely identical.

## **CERTIFICATE OF VIRUS CHECK**

John T. Fegley, Esquire, being duly sworn according to law, deposes and says that he is a Deputy District Attorney of Bucks County, and that a virus check was performed on the PDF file and hard copy of the brief by CrowdStrike Falcon Sensor version 7.15.18514.0, and no viruses were detected.

/s/Jfegley1987
_____
John T. Fegley, Esq.
Chief of Appeals

DATED: August 26, 2024


# **CERTIFICATE OF SERVICE**

I, John T. Fegley, Chief of Appeals of the Bucks County District Attorney's Office, do hereby swear and affirm that on the 26th day of August 2024, a true and correct copy of Appellees Letter Brief was served upon the following:

**VIA ELECTRONIC FILING:**

Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA  19106-1790

**VIA FIRST CLASS MAIL AND ELECTRONIC MAIL:**

Joseph W. Luby, Esquire
Cristi A. Charpentier, Esquire
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 W
Philadelphia, PA 19106
*Attorneys for Laird*

                                          Respectfully submitted,

                                          /s/ Jfegley1987

                                          _____
                                          John T. Fegley, Esquire
                                          Chief of Appeals
                                          Bucks County District Attorney's Office
                                          100 N. Main Street
                                          Doylestown, PA  18901
                                          (215) 348-6630
                                          Attorney I.D. No. 314437
                                          Attorney for the Commonwealth/Appellees