# FEDERAL COMMUNITY DEFENDER OFFICE
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEFENDER ASSOCIATION OF PHILADELPHIA
FEDERAL COURT DIVISION
**CAPITAL HABEAS UNIT**

**LISA EVANS LEWIS**
Chief Federal Defender

The Curtis - Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
Phone: 215.928.0520
Fax: 215.928.0826

**JENNIFER CHICCARINO**
First Assistant

August 26, 2024

**Via CM/ECF**

Patricia S. Dodszuweit, Clerk of Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re:  ***Richard Laird v. Sec'y Pa. Dept. of Corr.*, No. 17-9000**
(Appellant's Letter Brief)

Dear Ms. Dodszuweit:

I write in response to the Court's order of August 5, 2024, which directs the parties to file letter briefs describing "their views as to what, if any, impact *Thornell v. Jones*[,] 144 S. Ct. 1302 (2024) has on the instant case."

The Supreme Court in *Thornell* held that habeas petitioner Jones was not prejudiced by trial counsel's failure to develop and present mitigating evidence beyond what the defense offered at trial. Jones's crime was especially aggravated, involving "three gruesome killings, including the cold-blooded murder of a 7-year-old girl." *Id.* at 1307. Among the four "extremely weighty" aggravating circumstances was that the murders were "especially heinous, cruel or depraved." *Id.* at 1307–08, 1311. Conversely, the psychological and other mitigating evidence introduced on habeas review carried little weight, primarily because the evidence did

not provide a "link between Jones's disorders and the murders," and also because the habeas record provided little diagnostic or factual evidence beyond the trial mitigation. *Id.* at 1311–13. The Supreme Court therefore concluded that "there is no reasonable probability that the evidence on which Jones relies would have altered the outcome at sentencing." *Id.* at 1311.

The present case, as the Court will recall, involves the violent murder of Anthony Milano, a victim apparently chosen for his perceived sexual orientation. Trial counsel failed to discover and present Appellant Richard Laird's history of being orally and anally raped by his own father on "a regular basis" from the age of five until the age of eleven; failed to present the circumstances of that abuse to any expert; and thus failed to connect the consequences of Laird's abuse to the circumstances of his crime—including evidence that Laird felt "worthless" and "intensively ashamed of himself" and developed "a kind of hyper-masculinity" that included a "long smoldering antagonism toward persons identified as homosexual." Appellant's Br. at 36–50; Reply Br. at 11–14.

No such evidence was offered to Laird's jury, who accepted the prosecution's narrative that Laird was a mean drunk who hated gay people and recognized the victim as one of them. NT 2/5/07 at 28. Laird has therefore explained that the Pennsylvania Supreme Court was factually and legally unreasonable to characterize the omitted mitigation as "cumulative" to the trial evidence. *See* 28 U.S.C. §§ 2254(d)(1)-(2); Appellant's Br. at 40–46. Although the district court rejected that characterization of the missing evidence, it committed essentially the same error, reasoning that one or more jurors found that Laird had experienced at least *some* sexual abuse in the form of the "single incident of potential sexual abuse" described by Laird's younger brother Mark. App. 83; Appellant's Br. at 17–18, 46–50; Reply Br. at 11–14. The trial mitigation, then, was incomplete because it presented Laird's severe abuse "as an uncommon, instead of dominant, feature of [Laird's] childhood." *Abdul-Salaam v. Sec'y, Pa. Dep't of Corr.*, 895 F.3d 254, 272 (3d Cir. 2018).

*Thornell*'s relevance to this case is essentially two-fold. First, the Court employed the same prejudice test for ineffective-assistance claims that it has always employed, and thus, *Thornell* affirms the standards that govern Laird's claim. Second, the case-specific circumstances analyzed in *Thornell* amplify Laird's showing of prejudice here.

**I.**    ***Thornell* retained the prejudice test governing a penalty phase ineffective assistance claim.**

Although the Supreme Court had the opportunity to reshape the test for penalty phase prejudice, it instead relied on "the well-established standard articulated by this Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Thornell*, 144 S. Ct. at 1307. When adjudicating a claim that trial counsel failed to present mitigating evidence, "a court must decide whether it is reasonably likely that the additional evidence would have avoided a death sentence." *Id.* at 1314. That question, in turn, "requires an evaluation of the strength of all of the evidence and a comparison of the weight of aggravating and mitigating factors." *Id.*

The analysis prescribed by *Thornell* is the same one that governed before. The Court must "evaluate the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding in reweighing it against the evidence in aggravation." *Williams v. Taylor*, 529 U.S. 362, 397–98 (2000); *see also* Appellant's Br. at 36; Reply Br. at 13. The prejudice test, in other words, requires a "'probing and fact-specific analysis' regarding whether Laird was prejudiced at the penalty phase." Commonwealth Br. at 47 (quoting *Sears v. Upton*, 561 U.S. 945, 955 (2010)).

The Court granted review in *Thornell* because the Ninth Circuit "substantially departed" from the "well-established" standard in *Strickland*. *Thornell*, 144 S. Ct. at 1307. Nothing in *Thornell* suggests that the Court modified the standard instead of correcting the Ninth Circuit's departure from it. Because *Thornell* did not change the governing standard, it did not undermine this Court's sound precedents applying that standard. It remains the case, then, that prejudice may be established when "but for counsel's errors, evidence could have been introduced that was upgraded dramatically in quality and quantity," even when the new evidence "supports the same mitigating factor pursued at trial." *Abdul-Salaam*, 895 F.3d at 269 (citing *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 600 (3d Cir. 2015), and quoting *Bond v. Beard*, 539 F.3d 256, 291 (3d Cir. 2008)).

To be sure, the Court in *Thornell* detailed the substantial mitigating evidence that was presented at trial. *Thornell*, 144 S. Ct. at 1308. It relied on that substantial evidence as one of numerous weaknesses in the prisoner's claim. *See id.* at 1314 (distinguishing *Wiggins v. Smith*, 539 U.S. 510 (2003), *Williams*, and other authorities). But *Thornell* did not hold that substantial trial mitigation *itself* defeats a showing of prejudice. Neither did the Court overrule its own precedent that "We have never limited the prejudice inquiry under *Strickland* to cases in which there was only

little or no mitigation evidence presented." *Sears*, 561 U.S. at 954 (quotation omitted).

> **II.** **_Thornell_ underscores the critical nature of the mitigating evidence that Laird's counsel failed to present, as well as the weight of that evidence in comparison to the single aggravating circumstance proven at trial.**

The Court in *Thornell* rejected the prisoner's claim for a number of case-specific reasons. Several of those reasons are salient to Laird's case, and they amplify his showing of prejudice.

*Aggravating circumstances* – As explained above, the Court in *Thornell* relied on the four "extremely weighty" aggravating circumstances found by the trial court. *Thornell*, 144 S. Ct. at 1311. Jones committed multiple homicides; he was motivated by pecuniary gain; the murders were "especially heinous, cruel or depraved"; and one of the victims was a young child. *Id.* at 1308. The Court distinguished the case from *Wiggins* and *Williams*, in which both petitioners proved that they were prejudiced by trial counsel's deficient mitigating evidence. Both of those cases involved only "one aggravator," which is "a far cry from the weighty aggravating circumstances present here." *Id.* at 1314.

The aggravation in Laird's case is substantially less weighty than that in *Thornell*. The jury declined to find that the murder involved torture, which requires the defendant to "intend to inflict unnecessary pain and suffering," and to inflict such pain and suffering "in a manner or by means that are heinous, atrocious or cruel and show exceptional depravity." NT 2/13/07 at 171; App. 235–37. The sentencer was therefore left with the single (and stipulated-to) aggravating circumstance that the murder occurred during a kidnapping. App. 237; NT 2/13/07 at 164. Even then, the prosecutor admitted that "we don't know all of the details" of how Mr. Milano was kidnapped from his car to the wooded area where he was killed. NT 2/13/07 at 127. There is no question that kidnapping is a serious crime "that is likely to terrorize virtually anyone who becomes the victim of it." *Commonwealth v. Laird*, 119 A.3d 972, 998 (Pa. 2015); App. 201. But that does not make the kidnapping aggravator impervious to the forceful mitigating evidence of the kind that trial counsel overlooked here.

*Judge versus jury sentencing* – Death sentences in Arizona are imposed by trial judges instead of juries. On direct appeal, the Arizona Supreme Court reviews the "entire record" and does so by "independently weighing all of the aggravating

4

and mitigating evidence presented." *Thornell*, 144 S. Ct. at 1308 (quotation omitted). When rejecting Jones's showing of prejudice, the Supreme Court relied heavily on the fact that Arizona's courts gave little weight to the trial mitigation because it did not connect Jones's mental illness to his three murders. *Id.* at 1311–12. The newly presented evidence on habeas had the same shortcoming, and it therefore "would have done . . . little good in the Arizona courts." *Id.* at 1312. The Court analyzed the aggravating evidence in the same way. It reasoned that the "multiple homicides, cruelty, pecuniary motivation, and murder of a child" in Jones's case are factors that are "given great weight in Arizona" and are frequently held to outweigh substantial evidence of a defendant's abusive or otherwise troubled childhood. *Id.* at 1313–14.

Laird's case is materially different. A death sentence in Pennsylvania requires a unanimous vote by the jurors, and that is why *Strickland* prejudice depends on "whether 'there is a reasonable probability that *at least one juror* would have struck a different balance' in weighing the evidence for and against sentencing the defendant to death." Commonwealth Br. at 47 (quoting *Wiggins*, 539 U.S. at 537; emphasis added); *see also Jermyn v. Horn*, 266 F.3d 257, 309 (3d Cir. 2001). Having declined to find the torture aggravator, the jury in this case had to balance the mitigating circumstances against the single aggravating circumstance of a kidnapping. App. 237.

Kidnapping is a substantial aggravator, but its proof does not remotely ensure a death sentence. Indeed, some three years after Laird's trial in Bucks County, a different Bucks County jury deadlocked at the penalty phase and thereby imposed a life sentence, despite the fact that the defendant kidnapped a couple by carjacking them, shot one victim execution-style, and repeatedly raped the other victim—among other crimes, and in addition to the aggravating circumstance of creating a "grave risk" of death to a person other than the decedent. *Commonwealth v. Omar Shariff Cash*, No. 3526/08 (Bucks County Court of Common Pleas); *Cash v. Wetzel*, Civil Action No. 16-3758, 2021 WL 916926, at *1–4 (E.D. Pa. Mar. 10, 2021) (describing factual and procedural history). There remains a reasonable probability that the mitigating evidence underlying Laird's claim would have resulted in a life sentence under the lesser aggravation proven at Laird's trial.

***Nexus to the offense*** – Evidence of the petitioner's mental disorders, cognitive impairments, and abuse had relatively little mitigating effect in *Thornell*, because the evidence was not "causally connected to the murders." *Thornell*, 144 S. Ct. at 1311–13. In this case, by contrast, the omitted mitigating evidence connects Laird's troubling history with his troubling crime. A properly informed expert such as Dr. David Lisak would have advised the jury that Laird internalized the horrific abuse that he suffered, believing that the abuse was his fault. He experienced an intense

sense of shame, felt inferior to and intimidated by other males, and developed a façade or persona of "extreme toughness" and "hyper-masculinity," as well as a "long smoldering antagonism toward persons identified as homosexual." Appellant's Br. at 37–38, 45, and sources cited. On the trial record's scant evidence of Laird's sexual abuse, by comparison, the prosecutor was able to argue that the alleged abuse did not make Laird's crime any "less terrible." NT 2/13/2007 at 124.

***Corroboration of abuse*** – *Thornell* illustrates the importance of corroborating a defendant's claims of childhood abuse and injuries. The Court discounted Jones's evidence that his grandfather had sexually abused him because the allegation was "entirely uncorroborated," newly-minted on federal habeas review, and disputed by other family members. *Thornell*, 144 S. Ct. at 1313. The Court similarly discounted Jones's weakly corroborated and strongly contested evidence of physical abuse from his stepfather, as well as medically undocumented head injuries that allegedly resulted from car accidents and fights. *Id.* at 1312–13.

No such shortcomings impair the mitigating evidence at issue here. Dr. Lisak testified that "direct corroboration" of Laird's sexual abuse comes from Mark Laird's memory of what he witnessed as a child, including "the father coming out of the shower with a towel wrapped around him and taking Richard alone into a bedroom and closing the door and telling Mark to stay away." NT 5/24/2012 at 139. Dr. Lisak also relied on "indirect corroboration" of the abuse, including military records that describe Laird's father as an abusive alcoholic. *Id.* at 140.

Additionally, Laird's "first statements" to Dr. Lisak about the sexual abuse were "very corroborative of the fact that he was recounting traumatic experiences." *Id.* at 197. Those statements described specific "sensory memories," including the feeling of his father's penis rubbing between his "cheeks," the "gag reflex" he suffered from "the tactile experience of his father's ejaculate in his throat," and Laird's ongoing flashbacks to rectal pain. *Id.* at 196–200. Those sensations are "very specific symptoms of the kind of traumatic abuse or sexual abuse that he experienced." *Id.* at 199.

Further corroboration came from Laird's demeanor when describing his experiences. When Dr. Lisak broached the subject of sexual history, Laird "almost immediately physiologically simply changed in front of me" and manifested a state of "autonomic arousal." *Id.* at 92. "His respiration rate increased, [he]started sweating, [h]is face went pale, [and] [h]is . . . upper body became rigid," Dr. Lisak explained. *Id.* Laird "looked away from me" and "sort of dipped his head" when describing the abuse. *Id.* Those symptoms "flow directly from traumatic experiences

of sexual abuse." *Id.* at 100.

Still more corroboration comes from Laird's statement to a psychiatrist who evaluated him in 1994, or thirteen years before his retrial. Dr. Joseph Silverman observed that Laird's homophobia "may have been caused by the fact that at about age 9 he had been required to perform fellatio on an adult male [relative] on a few separate occasions." *Laird v. Horn*, 159 F. Supp. 2d 58, 114 n.30 (E.D. Pa. 2001) (brackets in original). Although Laird did not identify his abuser at that time, Dr. Lisak explained that his own evaluation "does corroborate the existence and the saliency of the ingredients identified by Dr. Silverman." App. 233.

Thank you for your kind attention to this matter, as well as for the Court's invitation to discuss the significance of *Thornell*. For the reasons explained above and in previous briefing, Laird respectfully requests that the Court vacate the district court's judgment and remand with instructions to grant habeas corpus relief with respect to Laird's unconstitutional sentence of death.

Respectfully submitted,


/s/ Joseph W. Luby
JOSEPH W. LUBY
CRISTI CHARPENTIER
Assistant Federal Defenders
Federal Community Defender Office
    for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, Pennsylvania 19106
(215) 928-0520

*Counsel for Appellant Richard Laird*

## CERTIFICATE OF COMPLIANCE

This letter brief is seven pages in length, and thus complies with the ten-page limit set forth in the Court's order of August 5, 2024. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14.

## CERTIFICATE OF SERVICE

I, Joseph W. Luby, hereby certify that on this 26th day of August 2024, the foregoing document was filed electronically and is available for viewing and downloading from the ECF system by:

John T. Fegley, Esquire
Office of the Bucks County District Attorney
55 East Court Street
Doylestown, PA 18901

/s/ Joseph W. Luby
*Counsel for Appellant Richard Laird*