# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **Richard Roland Laird,** | : | NO. 17-9000 |
| | : | |
| **Appellant** | : | |
| | : | **(This is a Capital Case)** |
| V. | : | |
| | : | |
| **Secretary, PA Dept. of Corrections, et. al.** | : | |
| | : | |
| | : | |
| **Appellees** | : | |

---

### APPELLEES' RESPONSIVE LETTER BRIEF REGARDING IMPACT OF THORNELL v. JONES, 144 S.CT. 1302 (2024)

---

Appeal from the Order of the United States District Court for the Eastern District of Pennsylvania, Entered August 19, 2016, in Case No. 11-1916, Denying Appellant's Petition for Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2254

**JOHN T. FEGLEY, ESQ**
**CHIEF OF APPEALS**
Attorney ID #314437

**JENNIFER M. SCHORN, ESQ**
**DISTRICT ATTORNEY**
Attorney ID #85173

**DISTRICT ATTORNEY'S OFFICE**
**BUCKS COUNTY COURTHOUSE**
**FOURTH FLOOR**
**55 EAST COURT STREET**
**DOYLESTOWN, PA 18901**
215-348-6630

# **TABLE OF CONTENTS**

| | |
|---|---|
| TABLE OF CONTENTS…………………………………………............... | i |
| TABLE OF AUTHORITIES…………………………………………........ | ii |
| ARGUMENT………………………………………………………..……… | 1 |
| CERTIFICATE OF BAR MEMBERSHIP………………….…..……….. | 8 |
| CERTIFICATE OF COMPLIANCE FED R.APP.P.32…………………. | 9 |
| CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS………… | 10 |
| CERTIFICATE OF VIRUS CHECK…………………………………….. | 10 |
| CERTIFICATE OF SERVICE……………………………………………. | 11 |

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Bobby v. Van Hook, 558 U.S. 4, 13 (2009) ............................................................. 6
Cash v. Wetzel, 2021 U.S. Dist. LEXIS 44332, p.13 (E.D. Pa. Mar. 10, 2021) ....... 6
Commonwealth v. Carson, 913 A.2d 220, 270-71 (Pa. 2006) .................................. 5
Commonwealth v. Cash, 137 A.3d 1262, 1268 (Pa. 2016) ...................................... 6
Commonwealth v. Dunkle, 602 A.2d 830 (Pa. 1992). .............................................. 2
Commonwealth v. Jones, 240 A.3d 881, 897 (Pa. 2020) ..................................... 2, 7
Commonwealth v. Laird, 119 A.3d 972, 999 (Pa. 2015) .......................................... 7
Ring v. Arizona, 536 U.S. 584 (2002) ...................................................................... 4
Thornell v. Jones, 144 S.Ct. 1302 (2024) ................................................................. 1

**Statutes**

42 Pa.C.S. § 5920 ..................................................................................................... 2

**Rules**

Fed. R. App. P.32 ..................................................................................................... 9

## ARGUMENT

In his Letter Brief, dated August 26, 2024, Laird attempts to distinguish Thornell v. Jones, 144 S.Ct. 1302 (2024), on the grounds that the High Court there gave little weight to the new mitigating factors because they were not causally connected to the murders while, Laird claims, his additional mitigating evidence made such a connection. Doc. 150, p.5-6. However, as stated in prior filings, this assertion is based upon a misreading of the record evidence. The jury in the instant matter did indeed hear from Dr. Dee that Laird has suffered sexual abuse from his father which resulted in a "long smoldering antagonism towards persons identified as homosexuals" and that sentiment might be the explanation for why Laird focused upon Anthony Milano on the night in question, N.T., 2/13/2007, p.97-98. By contrast, Dr. Lisak never presented such an opinion in the PCRA testimony of record. *See generally*, N.T., 5/24/2012.

Instead, Dr. Lisak opined that Laird's abuse gave him a self-reported lifelong aversion to being touched by other men. N.T., 5/24/2012, p.201-02. This attempt to connect the reported childhood abuse to the murder of Anthony Milano was wholly undermined by the evidence the jury heard, and had obviously credited, during the guilt phase testimony. Dr. Lisak had no explanation for the inexplicable discrepancy other than citing Laird's refusal to talk about the facts of the case under the guise that he did not remember them. Thus, directly contrary to Laird's

1

assertions, his new mitigating evidence does not provide a causal connection or explanation for the violent and brutal slaying of Anthony Milano. Instead, Dr. Lisak's opinion creates more questions than it answers and contradicts Dr. Dee's clear explanation presented in the guilt phase.

Laird further tries to distinguish the caliber of the mitigation testimony he presented in the PCRA under the claim that his description of childhood abuse was corroborated by his brother and the testimony of Dr. Lisak. Doc. 150, p.6. However, as the Commonwealth has argued during all prior proceedings, Dr. Lisak's testimony insofar as it attempts to insert his opinion on Laird's credibility in reporting his newly related instances of abuse would not be admissible testimony as it invades the province of the jury to make credibility determinations pursuant to Commonwealth v. Dunkle, 602 A.2d 830 (Pa. 1992). This core holding was in full effect at the time of Laird's penalty phase proceedings and, while it was subsequently limited by the enactment of 42 Pa.C.S. § 5920, the Pennsylvania Supreme Court has since reiterated that even after that statutory enactment, "Dunkle remains valid insofar as it precludes expert testimony concerning victim responses and behaviors that touch upon witness credibility." Commonwealth v. Jones, 240 A.3d 881, 897 (Pa. 2020). Accordingly, it is irrelevant that Dr. Lisak testified as to why he believed Laird's new disclosures of abuse because that testimony would have been admissible to corroborate his self-serving disclosure.

2

Laird's attempt to claim that his brother's testimony also provided corroboration is undermined by the fact that the jury heard the substance of Mark Laird's testimony through his own words in 2007 which detailed that his father's alcoholism and abuse were common occurrences and gave specific instances such as being struck with a military belt and gold right, and that Laird received worse abuse because he was older. N.T., 2/12/2007, p.69-72. Additionally, Dr. Dee's testimony related to the jury that it was Mark's disclosures that clarified for him that Laird's sexual abuser was his own father despite Laird's unwillingness to discuss that aspect of the abuse. N.T., 2/13/2007, p.59-60.

To the extent that Mark Laird provided more detailed anecdotes of the sexual abuse suffered during the PCRA, he all but admitted that these greater disclosures were due to the fact that he learned better coping mechanisms while incarcerated in the intervening years and because his PCRA testimony was not limited by the fear and nervousness that he had testifying in an open courtroom with the general public, the jury, and the press but in a small conference room. N.T., 6/19/2012, pp.23-24; 44; 54-56. Thus, when the details of Laird's claimed additional corroboration are examined, the supportive foundation that is alleged to exist amounts to nothing more than smoke and mirrors.

Laird further argues that any impact that Jones may have in this matter is blunted by the difference between the fact-finding procedure employed by the State

3

of Arizona at the time of Jones' sentencing proceedings and that employed by the Commonwealth of Pennsylvania. It is true, that Jones' sentencing proceeding predated Ring v. Arizona, 536 U.S. 584 (2002), and there a judge sitting as the finder and weigher of aggravating and mitigating factors allows for greater insight into the rationale behind the weighing process while a jury's decision can never be more than speculation. But there is nothing within the Jones Court's opinion which limits its rationale to procedures of judicial factfinding. Indeed, as "[a] petition for *writ of certiorari* [is] granted only for compelling reasons," U.S. Sup. Ct. Rule 10(a), it would be quite strange for our Supreme Court to grant the *writ* and issue an opinion which only applies to a sentencing procedure that it had effectively outlawed 20 years earlier in Ring.

     Nevertheless, the lack of a specific and articulated rationale from the jury does not undermine the simple logic that a mitigating factor comprised of childhood trauma which may offer an explanation as to why a defendant would commit an otherwise unfathomably heinous act will carry more weight with a jury than prior traumatic abuses wholly unrelated to the matter at hand. Laird admits as much in his amended brief. *See* Doc.103, p.52-53. Moreover, the Pennsylvania Supreme Court has recognized the same in its holdings which approve of a prosecutor's arguments to the jury that a mitigating factor should carry less weight when not connected to the murder. *See*, *e.g.*, Commonwealth v. Carson, 913 A.2d 220, 270-

71 (Pa. 2006)(finding proper the prosecution's argument that the defendant's childhood poverty was of little weight because many people who live in poverty obey the law and rise out of poverty).

As stated previously, but worth repeating, the testimony of record from Dr. Lisak does not explain a causal link between Laird's childhood abuse and the gruesome murder that was before the jury – Dr. Dee's testimony in the 2007 penalty phase proceedings did.  Dr. Lisak's opinion described Laird as an individual who, because of the effects of his past abuse, should have acted in the opposite manner that he did.  We do not need a written opinion from this jury to understand that its members gave did not give great weight to the aggravating factors which did not explain the heinous nature of the slaying of Anthony Milano.  We know this is true because their verdict reflects they did not do so with the mitigating factors of suffered physical abuse, emotional abuse, witnessing the abuse of others, the psychological consequences of abuse, and the history of suffering from substance abuse.  Thus, whether the finder of fact in the penalty phase is a judge or a jury, this new testimony from Dr. Lisak "suffers from the same weakness that led the [jury] to discount [Laird]'s other abuse allegations: it is not causally connected to the murders." Jones, at 1313.

Finally, to the extent that Laird attempts to undermine the weight of the aggravating factor in this matter by pointing to the case of Omar Shariff Cash, this

5

argument does nothing but underscore his improper view of how these factors are weighed. The weight of the aggravating factors lies not in the number of factors, but in the circumstances surrounding and underlying the factors. Here, the killing of Anthony Milano was brutal and done in the course of a kidnapping all of which was committed for no apparent reason other than the sexual orientation of the victim. Laird's attempt to compare the weighing process in this case against another case with materially different facts is emblematic of his failure to properly focus the assessment on the weight of the factors and not their number. Bobby v. Van Hook, 558 U.S. 4, 13 (2009).

Omar Shariff Cash's history is actually quite illustrative on the importance of this proper method of *weighing*, not *counting*, aggravating and mitigating factors. While the jury in Cash's Bucks County trial did not unanimously decide that the single aggravating factor outweighed his mitigating factors, Cash v. Wetzel, 2021 U.S. Dist. LEXIS 44332, p.13 (E.D. Pa. Mar. 10, 2021), a Philadelphia jury subsequently did find that the single aggravating factor of history of violent felony convictions outweighed "several circumstances satisfying the 'catchall' mitigating factor concerning [Cash]'s character and record" and sentenced him to death. Commonwealth v. Cash, 137 A.3d 1262, 1268 (Pa. 2016).

Thus, while the facts underlying and surrounding Omar Cash's homicides cannot be compared or analogized to those before this Honorable Court, his case is

6

an apt illustration as to why what is important is the weight of the factors found and not merely the number. Here, the heinous, thoughtless, and cruel nature of the kidnapping which preceded the excessive violence used to kill Anthony Milano was clearly given great weight by the jury as they had found it to outweigh the eight mitigating factors they also found.

More importantly, weighing the nature of the mitigation which was actually presented in the PCRA proceedings against the evidence presented during the 2007 penalty phases proceedings, it is readily apparent that the PCRA testimony "at most corroborates testimony the [jury] already credited," Jones, at 1312, and it was not an unreasonable application of federal law that for the Pennsylvania Supreme Court to find this evidence was not "reasonably likely to have convinced a juror to alter his or her balancing of the mitigating circumstances against the kidnapping aggravator." Commonwealth v. Laird, 119 A.3d 972, 999 (Pa. 2015).

WHEREFORE, Appellee respectfully requests that the Order of the District Court denying Laird habeas relief based be affirmed.

                                              Respectfully submitted:

                                              /s/Jfegley1987
                                              _____

                                              John T. Fegley, Esq.
                                              Chief of Appeals

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies that he is a member of the Bar of the United States Court of Appeals for the Third Circuit, having been admitted on June 21, 2016.

DATED: September 5, 2024  /s/Jfegley1987
_____
John T. Fegley, Esq.
Bucks County District Attorney's Office
Attorney for Appellees

## **CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32**

1. I hereby certify that this brief complies with the type-volume limitation of this Court's Order dated August 5, 2024, directing that the letter brief be no longer than 7 pages.

2. I further certify that this brief complies with the typeface requirements of Fed. R. App.P. 32(a)(5) and the type style requirements of Fed. R. App. P.32 (a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/Jfegley1987
_____
John T. Fegley, Esq.
Chief of Appeals
Bucks County District Attorney's Office
Attorney for Appellees

DATED: September 5, 2024

## **CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS**

John T. Fegley, Esquire, being duly sworn according to law, deposes and says that he is Chief of Appeals of Bucks County, and that the material on the PDF file and hard copy of the brief are completely identical.

## **CERTIFICATE OF VIRUS CHECK**

John T. Fegley, Esquire, being duly sworn according to law, deposes and says that he is Chief of Appeals of Bucks County, and that a virus check was performed on the PDF file and hard copy of the brief by CrowdStrike Falcon Sensor version 7.15.18514.0, and no viruses were detected.

/s/Jfegley1987
_____
John T. Fegley, Esq.
Chief of Appeals

DATED: September 5, 2024

# CERTIFICATE OF SERVICE

I, John T. Fegley, Chief of Appeals of the Bucks County District Attorney's Office, do hereby swear and affirm that on the 5th day of September 2024, a true and correct copy of Appellees' Letter Brief was served upon the following:

## VIA ELECTRONIC FILING:

Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA  19106-1790

## VIA FIRST CLASS MAIL AND ELECTRONIC MAIL:

Joseph W. Luby, Esquire
Cristi A. Charpentier, Esquire
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 W
Philadelphia, PA 19106
*Attorneys for Laird*

        Respectfully submitted,

        /s/ Jfegley1987

        _____
        John T. Fegley, Esquire
        Chief of Appeals
        Bucks County District Attorney's Office
        100 N. Main Street
        Doylestown, PA  18901
        (215) 348-6630
        Attorney I.D. No. 314437
        Attorney for the Commonwealth/Appellees