**FEDERAL COMMUNITY DEFENDER OFFICE**
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEFENDER ASSOCIATION OF PHILADELPHIA
FEDERAL COURT DIVISION
**CAPITAL HABEAS UNIT**

**LISA EVANS LEWIS**
Chief Federal Defender

The Curtis - Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
Phone: 215.928.0520
Fax: 215.928.0826

**JENNIFER CHICCARINO**
First Assistant

September 5, 2024

**Via CM/ECF**

Patricia S. Dodszuweit, Clerk of Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re:   ***Richard Laird v. Sec'y, Pa. Dept. of Corr.*, No. 17-9000**
       (Appellant's Response to Appellees' Letter Brief)

Dear Ms. Dodszuweit:

As directed by the Court's order of August 5, 2024, I write in reply to the Commonwealth's letter brief of August 26, 2024. The Commonwealth misreads the trial and post-conviction proceedings in several respects, and counsel appreciate this opportunity to set the record straight.

***Corroboration of sexual abuse*** – Insisting that the record shows "no independent corroboration" of Laird's sexual abuse, the Commonwealth argues that Laird's younger brother, Mark, never actually "saw any sexual abuse." CW Ltr. Br. at 2. But Dr. Lisak testified, and could explain to a jury, that it is a "very, very rare event for a sexual abuse of a child to be witnessed by people." NT 5/24/2012 at 137. Dr. Lisak described Mark's account as "direct corroboration" insofar as Mark recalled "the father coming out of the shower with a towel wrapped around him and taking

1

Richard alone into a bedroom and closing the door and telling Mark to stay away." *Id.* at 139. The Commonwealth's insistence on *eyewitness* corroboration would all but eliminate childhood sexual abuse as a viable mitigating circumstance. *See id.* (per Dr. Lisak, "[W]e never get witnesses" to childhood sexual abuse, or "almost never").

Worsening its misguided understanding of childhood sexual abuse, the Commonwealth later undermines its own attack on Mark's testimony, urging that Mark "convey[ed] multiple, habitual acts of sexual abuse" at trial. CW Ltr. Br. at 8. As the Commonwealth would have it, Mark's testimony was so *substantial* that the trial jury must have credited Laird's father with "inflict[ing] habitual physical abuse and sexual abuse," *id.* at 7–8, and yet so *insubstantial* that a new jury would necessarily reject the more extensive evidence of sexual abuse at issue now. *Id.* at 2–3. Whatever the Commonwealth's position might be, the "extremely severe sexual abuse" suffered by Laird, NT 5/24/2012 at 50, materially differs from the "entirely uncorroborated" evidence discounted by the Court in *Thornell v. Jones*, 144 S. Ct. 1302, 1313 (2024); *see also* Appellant's Ltr. Br. at 6–7.

***Dr. Lisak's testimony and report*** – The Commonwealth argues that Dr. Lisak's report is "not part of the PCRA record" and that his testimony, unlike his report, lacks a specific statement that Laird acted on a "long smoldering antagonism towards persons identified as homosexual." CW Ltr. Br. at 3–4. But the Commonwealth neglects to mention that the report was furnished to the PCRA court, that Laird moved for its admission, and that the court declined to admit the report because of its apparent preference for the experts to provide their opinions from the stand. NT 5/24/2012 at 6, 199, 218–19. To use the Commonwealth's parlance, Dr. Lisak's report is among the "evidence *presented* in the State court proceeding." CW Ltr. Br. at 4 (quoting 28 U.S.C. § 2254(d)(2)) (emphasis added). Nothing in AEDPA prevents the Court from considering that evidence.

At any rate, there is no substantive difference between Dr. Lisak's report and his testimony. *See* Reply Br. at 9 n.1. The Commonwealth points out that Dr. Lisak did not specifically employ Dr. Silverman's phrasing of a "long smoldering antagonism" from the PCRA witness stand. CW Ltr. Br. at 3–4. Nevertheless, Dr. Lisak explained that Laird developed a persona of "hyper-masculinity" to counter the shame that he felt from his father's six years of horrific sexual abuse, that Laird's persona was a means of "warning away anybody who might challenge who he is," and that Laird may have acted under a "long pent-up rage" on the night of the crime. NT 5/24/2012 at 115–16, 207–08. Dr. Lisak also testified that he relied on Dr. Silverman's report in reaching his conclusions. *Id.* at 52. It makes no difference whether the PCRA court specifically admitted Dr. Lisak's report.

*Nexus to the offense* – The Commonwealth rehashes its argument that Laird's sexual abuse and its traumatic consequences are not connected to the offense. Pointing to Dr. Lisak's testimony about Laird's aversion to being touched by other men, the Commonwealth observes that Mr. Milano did not "touch Laird or even get close to him" and was simply "sitting by himself at the bar and eating a sandwich." CW Ltr. Br. at 4–5. The Commonwealth's treatment of the evidence is incomplete. Dr. Lisak explained that "certain types" of touching or approaches by other males "could trigger a sharp, even violent reaction" from Laird, but that a "relatively sober" Laird "could and would be in control of those reactions." App. 233. The overwhelming evidence is that, in addition to his chronic abuse of methamphetamine, Laird was severely intoxicated at the time of the crime, with a blood alcohol content as high as 0.45. NT 2/8/07 at 28, 136–39; NT 2/13/07 at 77–78; App. 34, 233. Laird's abuse of alcohol and drugs began at the age of twelve, became a longstanding means of "self-medication," and is consistent with the experience of developmental trauma. NT 5/24/2012 at 117–20. The point is not that Laird rationally perceived Anthony Milano as a physical threat. Instead, Dr. Lisak described the possibility that "*in an extremely intoxicated state*, Richard may have acted on the long, pent-up rage he was capable of feeling towards any male whom he *perceived* as wanting to touch him against his will." App. 234 (emphases added).

All of that said, the Commonwealth is wrong to suggest that mitigating evidence cannot help to explain a crime unless it neatly accounts for all particulars of the offense. No such requirement exists. In *Bond v. Beard*, 539 F.3d 256, 283 (3d Cir. 2008), for example, the petitioner pointed to trial counsel's failure to develop evidence that he suffered from post-traumatic stress disorder caused by abuse he endured as a child, being attacked by gang members, and the stillbirth of one of his children. Those underlying causes had no demonstrable connection to the offense, in which Bond and an accomplice robbed a convenience store and fatally shot the manager. *Id.* at 261. Bond was nevertheless prejudiced by counsel's failure to present evidence of PTSD, along with other mitigation, because the jury could have heard "substantial evidence" that Bond "was under the influence of an extreme emotional or mental disturbance at the time he shot Lee." *Id.* at 290.

To similar effect is *Porter v. McCollum*, 558 U.S. 30 (2009). Trial counsel in *Porter* prejudicially failed to develop evidence that, among other things, Porter experienced PTSD from his harrowing combat experiences in the Korean War. *Id.* at 33–36 & n.4. Some three decades after the war, Porter fatally shot his ex-girlfriend and her boyfriend in a "crime of passion." *Id.* at 31–33. Counsel's failure to present the evidence of Porter's combat experiences and the resulting trauma left the

3

sentencing jury uninformed, because "the jury might find mitigating the intense stress and mental and emotional toll that combat took on Porter." *Id.* at 43–44. So too here: a jury would give mitigating effect to the terrifying sexual abuse that Laird suffered as a child, as well as the "mental and emotional toll" of that abuse, *id.*, whether or not the circumstances of the crime resemble the earlier trauma or otherwise "triggered" a post-traumatic response. With or without such a precise connection between cause and effect, it remains substantially mitigating that sexual abuse left Laird "severely traumatized as a child" and into adulthood. NT 5/24/12 at 50, 196–97, 199–202.

**<u>The trial mitigation</u>** – To little avail, the Commonwealth recycles its argument that Laird's sexual abuse and its effects were adequately presented at trial. CW Ltr. Br. 6–10. The Commonwealth again disputes the district court's conclusion that the trial testimony described only a "single incident of potential sexual abuse." *Id.* at 6; App. 83. With aid of a dictionary, the Commonwealth exhaustively parses the trial evidence to support its argument that multiple acts of abuse were described at trial. CW Ltr. Br. at 7–8. But the belabored argument itself proves Laird's point: the trial evidence was incomplete and skeletal as compared to the post-conviction evidence—concerning the specifics of the sexual abuse, its frequency, its duration, and its effects. *See* Reply Br. at 11–12. The issue is not whether the trial record *actually* disclosed more than a "single incident of potential sexual abuse." App. 83. It is that Judge DuBois's description of the trial evidence, whether strictly accurate or not, shows that the testimony failed to capture sexual abuse as a "dominant . . . feature of [Laird's] childhood." *Abdul-Salaam v. Sec'y, Pa. Dep't of Corr.*, 895 F.3d 254, 272 (3d Cir. 2018).

The Commonwealth fares no better invoking psychologist Dr. Henry Dee's trial testimony that Laird had a "long smoldering antagonism towards persons identified as homosexuals." CW Ltr. Br. at 8, 10. Dr. Dee agreed that Laird's antagonism "might" have led him to victimize Mr. Milano. NT 2/13/2007 at 97. But that means only that the murder could have been an anti-gay hate crime; indeed, Dr. Dee did not remember Dr. Silverman's report, and he never testified that Laird's "antagonism" resulted from his father's sexual abuse. *Id.* at 97–99. It is simply untrue, then, that Dr. Dee's testimony "provid[ed] a connection from abuse to the crime." CW Ltr. Br. at 8, 10.

\*   \*   \*   \*

4

Thank you for the Court's invitation to respond to the Commonwealth's letter brief. Please let us know if the Court requires additional information between now and the time of oral argument.

Respectfully submitted,

/s/ Joseph W. Luby
JOSEPH W. LUBY
CRISTI CHARPENTIER
Assistant Federal Defenders
Federal Community Defender Office
   for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, Pennsylvania 19106
(215) 928-0520

*Counsel for Appellant Richard Laird*

## **CERTIFICATE OF COMPLIANCE**

This letter brief is five pages in length, and thus complies with the seven-page limit set forth in the Court's order of August 5, 2024. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14.

## **CERTIFICATE OF SERVICE**

I, Joseph W. Luby, hereby certify that on this 5th day of September 2024, the foregoing document was filed electronically and is available for viewing and downloading from the ECF system by:

John T. Fegley, Esquire
Office of the Bucks County District Attorney
55 East Court Street
Doylestown, PA 18901

/s/ Joseph W. Luby
*Counsel for Appellant Richard Laird*